[3. The burden of proof is on the petitioner to show justification for the act under the seventh section, and this he must fully and affirmatively do before the court can take jurisdiction to discharge him.]

[A prosecution for murder, in the criminal court of Baltimore city, was commenced against George M. Carson, customs inspector for the Baltimore district; and on November 6, 1873, he filed a petition for a writ of habeas corpus, and for removal of the cause to the circuit court. The petition set forth that he was an officer of the United States, and that the offense with which he stood charged was done under color of the revenue laws of the United States, within the meaning of the act of March 2, 1833, § 3; 4 Stat. 633.
[There was a motion to dismiss the petition and remand the cause for want of jurisdiction.]

A. Stirling, Jr., Dist. Atty., for petitioner.
A. Geo. Knott, for state of Maryland.

BOND, Circuit Judge. We are of the opinion after consideration of the arguments presented in this cause that the third section of the act of congress of 1833, under which this petition is filed, is not applicable to criminal indictments. We are of opinion that the petitioner must file his petition under the seventh section of the act, alleging the fact that the act for which he is prosecuted and indicted was done in his capacity as an officer of the United States, and in pursuance of his duty as such, and in execution of the power with which he was clothed. Upon consideration of such petition, and proof of the facts alleged, the court would discharge the party, and, if satisfied the facts were not proven as alleged, would remand the prisoner to the state court for trial. This petition is not filed under the seventh, but under the third, section of the act of 1833; and, as we are of the opinion that this section applies only to civil causes, it must be dismissed and the cause remanded.
[A second petition, filed January 7, 1874, sought relief under the seventh section of the act of March 2, 1833. A writ of habeas corpus was granted, and on the return thereof the following opinion was delivered:]

BOND, Circuit Judge. From a consideration of the facts and the arguments of counsel in this case, while I am of opinion that the homicide for which this petitioner is in custody was accidental, yet, as the burden of proof in support of the facts alleged in his petition is upon the prisoner to show that justification which is contemplated by the seventh section of the act of 1833, I cannot satisfy myself that he has fully and affirmatively done so. This he must do before I have jurisdiction to discharge him, and I can only therefore now dismiss the petition.

## Case No. 2,460.

In re CARSON.

[5 Ben. 277;[1] 5 N. B. R. 290.]

District Court, S. D. New York. July, 1871.

BANKRUPTCY—CREDITOR BROUGHT IN AFTER FIRST MEETING—ASSIGNEE.

Where, after an assignee has been appointed, a creditor is added by an amendment of the bankrupt's schedules, no new meeting of creditors or choice of assignee is necessary. The creditor, when brought in, should be notified of the proceedings, and may petition the court for a removal of the assignee chosen if he has cause to do so.

[On certificate of register in bankruptcy.]

In this case an assignee was chosen on the 3d of March, 1871, and an assignment was executed on the 10th of March. On the 4th of April [James Carson] the bankrupt prayed leave to amend his schedules by adding the name of a creditor. Leave was granted, and on the 19th of April an amended schedule was filed. The register, on request of the bankrupt, certified to the court the question whether it became necessary to have a new meeting of creditors for the choice of an assignee. The register gave it as his opinion that it was not necessary to have a new meeting, or a new choice of assignee; that the creditor should be notified of the proceedings, and notified to prove his claim, if he desired; and that if he proved his claim he would have the right to petition the court for the removal of the assignee, if he desired.

BLATCHFORD, District Judge. I concur in the views of the register.

## Case No. 2,461.

In re CARSON et al.

[2 N. B. R. 107 (Quarto, 41).][2]

District Court, S. D. New York. Sept. 22, 1868.

BANKRUPTCY — EXAMINATION OF BANKRUPT AS TO HIS PROPERTY.

1. Questions 67, 99, 229, 264, 265, 267, 268, 272, 273 and 274 are proper and relevant. Question 41 improper and irrelevant.

[2. Cited in Re Dole, Case No. 3,965, to the point that, on an examination in bankruptcy, questions are proper which may elicit answers tending to show that the bankrupt owned or had an interest in property at the time the petition was filed.]

[On certificate of register in bankruptcy.]

The undersigned register in bankruptcy having in charge the proceedings in this bankruptcy, hereby certifies that Melvin Hard, one of the bankrupts above named, was examined on oath, before the undersigned, and that his examination is set forth

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [Reprinted by permission.]

in his deposition hereto annexed; and that in the course of said examination the questions arose which are stated in said examination; which questions are hereby, at the request of the parties, certified to the honorable, the judge of the district court of the United States for the southern district of New York for his decision thereon. Isaac Dayton, Register.

Examination of George W. Carson and Melvin G. Hard, the bankrupts above named, taken pursuant to an order made in this bankruptcy court.

Melvin G. Hard, one of the bankrupts, appeared in person and by Mr. Boardman, his counsel.

The examining creditors appeared by Mr. Winslow. The witness, having testified that certain property belonged to his wife, was asked: 40. Q. Have either you or your wife ever talked of selling it? A. I don't know what she has talked about; I have not. 41. Q. Have you ever heard her speak of it? Objected to by counsel for the bankrupt. Answer insisted upon. Bankrupt declines to answer the question. Witness, having further testified as to the transfer of the property, was asked: 67. Q. Did your wife keep a bank account at that time? Objected to. Answer insisted upon. A. I decline to answer that question. The witness, having spoken of a horse and wagon being kept at a certain stable, was asked: 99. Q. Where were the horse and wagon taken to from that stable? Objected to. Answer insisted upon. The bankrupt declines to answer. The witness, having testified about the purchase of some lots, was asked: 229. Q. Did you recommend the purchases? Objected to. The bankrupt declines to answer. Witness, having testified that his brother carried on the paper business, was asked the following questions: 264. Q. How long has he carried on the paper business in Beekman street. Objected to. The bankrupt declines to answer. 265. Q. Is he the successor of Carson & Hard? Objected to. Answer insisted upon. The bankrupt declines to answer. 266. Q. What became of your business when you failed? A. It went into the hands of the assignees, William Binns and Samuel Bates. 267. Q. What did they do with it? Objected to. Answer insisted upon. The bankrupt declines to answer. 268. Q. Did they turn it over to A. P. Hard, and if so, when? Objected to. Answer insisted upon. The bankrupt declines to answer. 269. Q. Who, if any one, is the managing agent for A. P. Hard in New York? A. I act for him. 270. Q. How long have you acted for him? A. I could not say positive; six or seven years. 271. Q. Ever since he has had possession of that store? A. Yes. 272. Q. When was he in New York last? Objected to. Answer insisted upon. The bankrupt

declined to answer. 273. Q. How frequently has A. P. Hard been in New York since he has carried on this business? Objected to. Answer insisted upon. The bankrupt declined to answer. 274. Q. State about what is the value of the stock in this business? Objected to. Answer insisted upon. The bankrupt declined to answer.

By Isaac Dayton, Register:

A statement of the opinion of the [register] as to the relevancy of the various questions in respect to which objections were taken, is given in the case of each objection as it arose in the course of the examination. The objection to the 41st question, does not in the judgment of the [register] admit of any discussion. As to the 67th question, the [register] is unable to perceive that it comes within the scope of the examination provided for by the 26th section of the bankrupt act, to inquire whether the "wife of a bankrupt kept a bank account." With respect to the 99th question, the opinion of the [register] is, that there is not anything disclosed by the examination thus far of the bankrupt to make it of any consequence to what place the horse and wagon were taken from the stable mentioned. The 264th question being objected to, nothing having appeared to show that the bankrupt was concerned in the business, carried on by A. P. Hard, it was immaterial how long he had carried on that business. But when by the 265th question, the bankrupt was asked whether A. P. Hard, was the successor of Cardon & Hard, this might relate to "the disposal of his property," by the bankrupt, and in the judgment of the [register] was within the scope of the statute. In the opinion of the [register] the bankrupt having testified that the business went into the hands of the assignees, the bankrupt cannot be called upon to answer what they did with it, or whether they turned it over to A. P. Hard, as inquired of him by questions 267 and 268. On the facts thus far disclosed, there is not in the opinion of the [register] any foundation laid for the inquiries made by questions 272, 273 and 274.

BLATCHFORD, District Judge. I think that question 41 is improper, and that questions 67, 99, 229, 264, 265, 267, 268, 272, 273 and 274 are proper.

CARSON (ARMSTRONG v.). See Case No. 543.

## Case No 2,461a.

### CARSON v. BLAZER.

[Cited in Fisher v. Carter, Case No. 4.815. This is a state case, and is reported in 2 Bin. (Pa.) 475.]